1
2
3
4
5
6
7
8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12   JAMES FRANK,                              CASE NO. CV F 08-284 LJO-GSA

13                  Plaintiff,                 **SUMMARY JUDGMENT/ADJUDICATION
                                               DECISION**
14        vs.                                  (Doc. 48.)

15
     WILBUR-ELLIS COMPANY SALARIED
16   EMPLOYEES LTD PLAN and LIFE
     INSURANCE COMPANY OF NORTH
17   AMERICA,

18
                    Defendants.
19   _____/

20                            **<u>INTRODUCTION</u>**

21        Plaintiff James R. Frank ("Mr. Frank") seeks summary judgment that he is entitled to

22   reinstatement and future payment of long-term disability ("LTD") benefits under a policy purchased by

23   Mr. Frank's employer Wilbur-Ellis Company.  Defendants Life Insurance Company of North America

24   ("LINA") and Wilbur-Ellis Salaried Employees LTD Plan ("Plan") contend that Mr. Frank is not entitled

25   to summary judgment in that his ERISA[1] claim must be addressed de novo in a bench trial.  This Court

26

27   ───────────────

28        [1]     The Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001,
     et seq., to render Mr. Frank's claims subject to ERISA.

                                              1

considered Mr. Frank's summary judgment/adjudication motion on the record[2] and VACATES the

February 18, 2009 hearing, pursuant to Local Rule 78-230(h).  For the reasons discussed below, this

Court DENIES Mr. Frank summary judgment/adjudication.

## BACKGROUND

### The Plan

Wilbur-Ellis Company purchased group disability and life policies which are part of the Plan and

which were issued by LINA.  Wilbur-Ellis Company is the Plan's administrator, and LINA administers

claims under the Plan, including benefits eligibility.  Mr. Frank participated in the Plan and was eligible

for LTD and life benefits.  Mr. Frank claims that the Plan and LINA wrongfully terminated his LTD

benefits and waiver of life insurance premiums.

### Mr. Frank's Disability

Wilbur-Ellis Company employed Mr. Frank, age 51, as an agricultural equipment salesman

during 1981-2000.  In May 2000, Mr. Frank claimed disability from right knee problems.  LINA began

paying Mr. Frank LTD benefits effective May 29, 2000 and waived his life insurance premiums.  Mr.

Frank also received Social Security disability benefits which LINA offset against his LTD benefits.  By

February 2002, Mr. Frank had undergone surgical procedures on both knees.

### Benefits Termination

Mr. Frank was subject to annual reviews for continued eligibility of LTD benefits and which

rested in part on information from his treating physicians.  In 2006, Mr. Frank was treated for right knee

orthopedic problems, coagulopathy and chronic venous insufficiency due to recurrent deep venous

thrombosis, and chronic pain.  Mr. Frank treated with orthopedic surgeon Malcolm Ghazal, M.D. ("Dr.

Ghazal"), and hematologist and oncologist L. Thomas Hackett, M.D. ("Dr. Hackett").

Dr. Ghazal completed a February 2006 supplemental claim form to note that Mr. Frank was

/ / /

---

[2]    This Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties.  Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did not consider the argument, document, paper or objection.  This Court thoroughly reviewed and considered the evidence it deemed admissible, material and appropriate for summary judgment/adjudication.

"improved" and "ambulatory."[3]  Dr. Ghazal noted that Mr. Frank was a suitable candidate for further rehabilitation and could return to work on March 1, 2006.  On February 16, 2006, LINA claim manager Israel Piotter ("Mr. Piotter") discussed with Dr. Ghazal's office that the supplemental claim form referred to Mr. Frank's left knee.  LINA claims that its early March telephone contact with Dr. Ghazal's office confirmed that Mr. Frank is able to "perform work at a medium/manual activity."  LINA received a March 7, 2006 letter from "Miranda S." to confirm that the supplemental claim form addressed Mr. Frank's left knee.

In April 2006, LINA sent a Physical Ability Assessment Form ("PAA") to Drs. Ghazal and Hackett and which identified Mr. Frank by name and date of birth.  The PAA requested a medical opinion on Mr. Frank's limitations and restrictions and a diagnosis.  Dr. Hackett's April 27, 2006 PAA indicated a coagulopathy diagnosis and that Mr. Frank is able occasionally to sit, stand, walk, push/pull 10 pounds and lift/carry 10 pounds.

After not receiving Dr. Ghazal's completed PAA, LINA sent Dr. Ghazal a blank PAA without Mr. Frank's name or birth date.  Dr. Ghazal completed and signed a June 26, 2006 PAA ("June 26 PAA")[4] to indicate that Mr. Frank is able to: (1) balance and lift/carry 10-20 pounds continuously; (2) sit "5.5+" hours; (3) stand, stoop and walk frequently; and (4) carry 21-50 pounds, climb stairs and ladders, and work overtime occasionally. The June 26 PAA lacked a diagnosis, and Mr. Frank claims that LINA did not follow up with Dr. Ghazal.

LINA received from an occupational skills analyst an August 17, 2006 transferrable skills analysis which indicated Mr. Frank had transferrable job skills to positions of agricultural and mechanical equipment sales and agriculture inspector.

Mr. Piotter's August 25, 2006 letter denied Mr. Frank continued LTD benefits and provided:

> We have information from your physicians indicating that you are being treated for post right knee quadriceps repair using Achilles tendon allograft, and a Transferable Skills Analysis which identified occupations that you could perform based on the restrictions provided by your Orthopedic Physician, past training, education and experience.

---

[3]     Mr. Frank appears to claim that that Dr. Ghazal's physician assistant completed the supplemental claim form.

[4]     Mr. Frank characterizes that Dr. Ghazal "appeared" to partially complete and sign the June 26 PAA.  Dr. Ghazal does not challenge his signature to the June 26 PAA.

1

2

3

4

> Based on the pertinent vocational and medical documentation contained in the file, we have determined that you retain the capacity to perform work in your own occupation and any other occupations based on your current functional limitations, your past training, education, and experience. Therefore, we must deny your claim for Long-Term Disability benefits as of August 23, 2006.

5 Another August 25, 2006 letter from LINA terminated waiver of premiums under Mr. Frank's life

6 policy. The letter informed Mr. Frank that to retain his life coverage, he needed to submit his application

7 and first month's premium within 31 days, even if he appealed denial of his disability claim. Mr. Frank

8 applied for and converted his group life policy to an individual policy and claims he has paid LINA

9 quarterly premiums totaling $16,535.50 for an individual life policy issued by LINA.

10 **Mr. Frank's Appeal**

11 Mr. Frank appealed denial of his continued LTD benefits and life insurance premium waiver.

12 Dr. Ghazal wrote a September 1, 2006 letter for Mr. Frank to state that a LINA letter to Mr. Frank

13 "quoted some things or reports from my office that I cannot seem to find paperwork to substantiate."

14 Dr. Ghazal concluded that "Mr. Frank is disabled":

15

16

17

> He is unable to perform any weightbearing activities of any description in a profitable and reliable way. It is unlikely that the status will change. He has two bad knees, one of which has undergone multiple surgical procedures in order to get it to the functional level that it is now and, at that, it is only poorly functional. The other one is documented to be very arthritic and will need to be addressed at some point.

18 Dr. Ghazal listed limitations of:

19

20

    1.    It is very difficult to perform weightbearing activities and he is only able to take very short strides.

21

    2.    He is in need of a walking aid such as a cane or a walker and sometimes a wheelchair when he fatigues.

22

23

    3.    He cannot carry more than 10 pounds and at that, only for very short distances. Since he is reliant on a walking aid, this only frees up only one hand at best to carry the weight.

24

    4.    He is unable to push or pull any weight such as machines, trays, trash cans, etc.

25

    5.    He can only ambulate for approximately 50 feet before having to stop and rest.

26

    6.    He can only walk on hard and level ground and has an exceptionally difficult time with uneven ground, inclines or declines.

27

28

    7.    When he is weightbearing for any period of time, he has significant swelling of his right leg primarily from his knee to his ankle but also in the right thigh.

4

. . .

11.     He complains of constant superior ache in the right leg the preponderance of the time.

12.     He finds himself frequently lying down to relieve his pain.

13.     He has atrophy of the right leg muscles.

14.     He feels unstable with weightbearing activities.

15.     He requires help to upright himself when he has fallen.

16.     He cannot stoop, kneel, crawl or squat at all.

17.     He will be undergoing left knee surgery in January of 2007, as currently scheduled.

Dr. Hackett also wrote a September 1, 2006 letter to note:

> Looking at the limitations that Dr. Malcolm Ghazal stated, the patient can be disabled, and still be able to do some work with his hands, and still be able to travel to his niece's wedding. I don't see anything in this note that states this person is no longer disabled, and that he can go back to full time work. This patient has chronic venous insufficiency due to recurrent deep venous thrombosis. He has had numerous knee surgeries. He ambulates with a cane, and has quite marked pain in the knees.

On September 26, 2006, Mr. Piotter noted in the claim file that Dr. Ghazal had submitted a "list of limitations." On October 10, 2006, LINA appeal assignee Troy Phipps ("Mr. Phipps") noted in the claim file that Dr. Ghazal had stated he was unaware of the June 26 PAA and that Mr. Frank is disabled.

Thereafter, LINA neither reopened Mr. Frank's claim, contacted Drs. Ghazal or Hackett, obtained another transferable skill assessment, nor commissioned an independent medical examination of Mr. Frank. LINA medical director Scott C. Taylor, D.O. ("Dr. Taylor"), completed a December 29, 2006 appeal file review to conclude that the "medical information reviewed does not provide documentation of functional deficits which support L&Rs [limitations and restrictions] from 9/23/06 to present." Dr. Taylor noted that he reviewed the PAAs, office notes and September 1, 2006 letters of Drs. Ghazal and Hackett and determined that the activities which Mr. Frank reported to Drs. Ghazal and Hackett contradicted the PAAs' limitations. Mr. Frank notes that Dr. Taylor neither examined Mr. Frank nor contacted Drs. Ghazal or Hackett.

On January 3, 2007, Mr. Phipps notes in the LINA claim file that Dr. Ghazal claimed to be

1  unaware of the June 26 PAA and stated that Mr. Frank was disabled.  Mr. Phipps noted Dr. Taylor's

2  findings that Mr. Frank's reported activities contradicted statements in PAAs and that medical records

3  did not support limitations and restrictions to preclude Mr. Frank to work.

4       Mr. Phipps' January 4, 2007 letter to Mr. Frank noted that LINA had completed its review,

5  including Drs. Ghazal and Hackett's September 1, 2006 letters, and "must uphold our prior decision to

6  deny your claim."  Mr. Phipps noted: "Your medical record does not provide documentation of

7  functional deficits which support you are precluded from light duty work.  Therefore, the results of the

8  transferable skills analysis remain valid."

9       LINA did not respond to Mr. Frank's January 4, 2007 letter to request to "indicate what portion

10  of Dr. Ghazal's report that says I can return to work."  The February 14, 2007 letter of Mr. Frank's

11  counsel to LINA noted the absence of a June 26, 2006 document from Dr. Ghazal that "Mr. Frank is

12  capable of medium work capacity."  Mr. Frank's counsel asked if the June 26 PAA was the document

13  to which LINA referred.  LINA's March 21, 2007 letter confirmed that it had referenced the June 26

14  PAA.

15       **<u>Mr. Frank's Claims</u>**

16       Mr. Frank proceeds on his first amended complaint to pursue ERISA claims that the Plan and

17  LINA wrongly discontinued his LTD benefits and wrongly dishonored his waiver of life policy

18  premiums in that Mr. Frank continues to be disabled.  Mr. Frank seeks $23,364 for withheld LTD

19  benefits and future $1,013 monthly benefits up to July 2013 amounting to $54,702.  Mr. Frank further

20  seeks return of $16,535.50 for life insurance premiums[5] and reinstatement of his group life insurance

21  benefits, including waiver of premiums.

22       **<u>DISCUSSION</u>**

23       **<u>De Novo Standard Of Review</u>**

24       "ERISA is a remedial statute which Congress enacted to protect employee pension benefit rights

25  and to protect employers from conflicting and inconsistent state and local regulations of pension plans."

26  *Shaw v. Delta Air Lines*, 463 U.S. 85, 90-91, 103 S.Ct. 2890, 2896-2897 (1983).  Under ERISA, a civil

27

28      [5]    Mr. Frank claims that he has paid LINA $1,653.55 quarterly premiums.

6

1  action may be brought by a plan participant, beneficiary or fiduciary. 29 U.S.C. § 1132(a). "A primary

2  goal of ERISA [is] to provide a method for workers and beneficiaries to resolve disputes over benefits

3  inexpensively and expeditiously." *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472 (9th Cir.

4  1993) (quoting *Sandoval v. Aetna Life & Casualty Co.*, 967 F.2d 377, 380 (10th Cir. 1992)).

5      The parties agree to this Court's de novo review whether Mr. Frank is disabled. "De novo is the

6  default standard of review" by which a "court simply proceeds to evaluate whether the plan administrator

7  correctly or incorrectly denied benefits, without reference to whether the administrator operated under

8  a conflict of interest." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).

9      The Plan and LINA argue that summary judgment is improper to determine whether Mr. Frank

10  is disabled. In an ERISA case such as this, a district judge asks "not whether there is a genuine issue

11  of material fact, but instead whether [the plaintiff] is disabled within the terms of the policy. In a trial

12  on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting

13  testimony and decide which is more likely true." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095

14  (9th Cir.), *cert. denied*, 528 U.S. 964, 120 S.Ct. 398 (1999). A district court may try the case on the

15  administrative record so that even if the trial "consists of no more than the trial judge rereading what he

16  has already read, and making findings of fact and conclusions of law instead of a summary judgment

17  decision, [it] may have real significance." *Kearney*, 175 F.3d at 1095.

18      Mr. Frank contends that even under a de novo standard, he is entitled to summary judgment in

19  that there is no genuine factual issue that he is disabled because the medical evidence establishes

20  "impairments stemming from osteoarthritis in his knees, chronic venous insufficiency due to recurrent

21  deep venous thrombosis, and chronic pain." Mr. Frank offers that this Court may consider "additional

22  evidence," his declaration and its exhibits, because LINA's procedural irregularities prevented full

23  development of the record. Mr. Frank faults LINA for failure to follow up on "*perceived* discrepancies

24  reflected in the physicians' records, particularly Dr. Hackett's April 11th office visit note, and the

25  discredited June 26th PAA." (Italics in original.) Mr. Frank relies on *Abatie*, 458 F.3d at 974, where the

26  administrator tacked "on a new reason for denying benefits in a final decision, thereby precluding the

27  plan participant from responding."

28      At the outset, Mr. Frank fails to demonstrate how this Court may skirt the *Kearney* requirement

7

1   to conduct a trial on the record and address the disability issue by summary judgment.  Unlike the

2   administrator in *Abatie*, LINA did not tack on new reasons to deny benefits.  Mr. Frank's disagreement

3   with LINA's evaluation of the medical evidence does not amount to procedural irregularities to entitle

4   him to evidence beyond the administrative record.  "We emphasize that a district court should not take

5   additional evidence merely because someone at a later time comes up with new evidence that was not

6   presented to the plan administrator."  *Mongeluzo v. Baxter Travenol Disability Benefit Plan*, 46 F.3d

7   938, 944 (9th Cir. 1995).  A trial on the administrative record, not summary judgment, without additional

8   evidence is the proper means to determine whether Mr. Frank is disabled.  This Court agrees with the

9   Plan and LINA that the points raised in pages 11-22 of Mr. Frank's opening brief are improper for

10  summary judgment determination.  Moreover, Mr. Frank's reply papers raise improper points, and if

11  anything, highlight factual issues which would preclude summary judgment.

12      Moreover, at the September 10, 2008 scheduling conference and in their joint scheduling report,

13  the parties contemplated no pretrial motions, and this Court's scheduling order set no pretrial motion

14  filing and hearing deadlines in favor of trial.  Mr. Frank exceeded the scheduling order with his summary

15  judgment/adjudication motion.

16                                  **LINA As A Defendant**

17      In the absence of summary judgment, Mr. Frank seeks summary adjudication that LINA is a

18  proper defendant in that it "was delegated the administration of the Plan in terms of making benefits and

19  eligibility determinations" and "was solely responsible for the investigation and determination of Frank's

20  claim."  Mr. Frank claims that "LINA acted with no restrictions and with complete authority in

21  administering the Plan" as to Mr. Frank.  LINA responds that it is not the proper party because Wilbur-

22  Ellis Company is the Plan administrator.  LINA argues that it lacks liability as the issuer of "the

23  insurance policy that insured the Plan."

24      An employee welfare benefit plan is established and maintained by an employer to provide

25  benefits for its participants.  *Everhart v. Allmerica Financial Life Ins. Co.*, 275 F.3d 751, 753 (9th Cir.

26  2001).  The plan provides these benefits "through the purchase of insurance or otherwise."  11 U.S.C.

27  § 1102(1).

28      Under 29 U.S.C. § 1132(a)(1)(B), a plaintiff may seek to "recover benefits due him under the

8

terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  However, a money judgment for an action under 29 U.S.C. § 1132(a)(1)(B) may be enforced "only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity" 11 U.S.C. § 1132(d)(2); *Everhart*, 275 F.3d at 753.  "ERISA permits suits [under 29 U.S.C. § 1132(a)(1)(B)] to recover benefits only against the Plan as an entity." *Gelardiv. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir. 1985).  Section 1132 (a)(1)(B) does not permit suits against a third-party insurer to recover benefits when the insurer is not functioning as the plan administrator." *Everhart*, 275 F.3d at 756.

LINA distinguishes between roles of a plan administrator and claims administrator.  LINA acknowledges that it administered Mr. Frank's claim, not the Plan.  As a third-party insurer, LINA seeks to avoid ERISA liability.  Mr. Frank fails to demonstrate that LINA is a plan administrator in that it administered his claim to entitled him to summary adjudication that LINA is a proper defendant.

Perhaps recognizing as much, Mr. Frank in his reply papers notes that if he succeeds on the disability issue, LINA will be responsible to refund premiums on the individual life policy it issued to him on conversion of the group policy.  A moving party's attempt to introduce new facts or different legal arguments in reply papers is improper. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 894-895, 110 S.Ct. 3177, 3192  (1990) (court has discretion to disregard late-filed factual matters); *but see also Glenn K. Jackson v. Roe*, 273 F.3d 1192, 1201-1202 (9th Cir. 2001) (district court's discretion to consider issue raised for first time in reply brief).  As such, this Court will not entertain Mr. Frank's arguments regarding LINA's role as a potential refunder of premiums.

### Conflict Of Interest

Mr. Frank seeks summary adjudication that LINA "operates under a conflict of interest in terms of making eligibility determinations."  The Plan and LINA respond that this Court's de novo review renders a purported conflict of interest irrelevant.

The Plan and LINA are correct.  The U.S. Supreme Court has held that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict of interest must be weighted as 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone Tire & Rubber Co. v. Branch*, 489 U.S. 101, 115, 109 S.Ct. 948, 957 (1989).  In the Ninth Circuit, if an

insurer has a conflict of interest arising from dual roles as administrator and funding source for the plan, judicial review is for abuse of discretion but is "less deferential."  *Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130, 1145 (9th Cir. 2001), *abrogated on other grounds*, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003); *Medford*, 244 F.Supp.2d 1126.  A court must examine whether an "apparent" conflict of interest exists because of a plan administrator's economic stake in the decision to award benefits. *Medford*, 244 F.Supp.2d at 1126-1127.  A court must make an "intermediate inquiry" to determine whether the conflict of interest "affected" the decision. *Regula*, 266 F.3d at 1145; *Medford*, 244 F.Supp.2d at 1127.  If the inquiry leads to the conclusion that the conflict of interest affected the administrator's decision, an "actual" conflict is said to exist and the decision is reviewed de novo.  *Tremain*, 196 F.3d at 975; *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1109 (9th Cir. 1999); *Medford*, 244 F.Supp.2d at 1127.  "[T]he abuse of discretion standard can be heightened only by a 'serious' conflict of interest." *Jordan v. Northrop Gruman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004).

Given here that "de novo review applies, no further preliminary analytical steps are required." *Abatie*, 458 F.3d at 963.  As such, this Court need not address the conflict of interest issue.

### ERISA Relief And Attorney Fees

Since Mr. Frank is not entitled to summary judgment that he is disabled, this Court need not consider his requests for withheld and future LTD benefits, refunded life insurance premiums, reinstated life insurance benefits, prejudgment interest and attorney fees.  This Court exercises its discretion under 29 U.S.C. § 1132(g) to not award the Plan and LINA costs to oppose the summary judgment motion.

### CONCLUSION AND ORDER

For the reasons discussed below, this Court:

1.      DENIES Mr. Frank summary judgment/adjudication; and

2.      CONFIRMS the June 16, 2009 court trial limited to de novo review of the administrative record.

IT IS SO ORDERED.

Dated:   __February 11, 2009__          _____/s/ Lawrence J. O'Neill_____
                                        UNITED STATES DISTRICT JUDGE